# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| DAVID STARLEY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:12-cv-00465 |
| | ) | |
| v. | ) | Judge Nixon |
| | ) | Magistrate Judge Knowles |
| CLARKSVILLE-MONTGOMERY COUNTY | ) | |
| SCHOOL SYSTEM, | ) | JURY DEMAND |
| | ) | |
| Defendant. | ) | |

## ORDER

Pending before the Court is Defendant Clarksville-Montgomery County School System's (CMCSS) Motion for Summary Judgment ("Motion"). (Doc. No. 23.) For the reasons stated below, Defendant's Motion is **GRANTED.** Defendant's Motion to Ascertain Status (Doc. No. 41) is **TERMINATED as MOOT.** The Clerk of the Court is **DIRECTED** to close the case.

## I.  BACKGROUND

### A.  Facts[1]

Plaintiff David Starley became the Assistant Principal of Montgomery Central High School ("MCHS") in Cunningham, Tennessee, in 1999. Starley requested leave under the Family Medical Leave Act ("FMLA") on March 16, 2011. (Doc. No. 34-6 at 12.) Starley's

---

[1] As required by the Local Rules of the Middle District of Tennessee, Defendant CMCSS filed a Statement of Undisputed Material Facts (Doc. No. 25) as to which it contends there is no genuine issue for trial. *See* Local Rule 56.01(b). The Local Rules require the non-moving party to register any dispute of fact by (1) denying the fact, *and* (2) providing "specific citations to the record supporting the contention that such fact is in dispute." Local Rule 56.01(c). Failure to respond or to support a denial with citations to the record constitutes an admission that the fact is not in dispute for the purposes of the motion for summary judgment. Local Rule 56.01(c), (g). Plaintiff filed a Response to Defendant's Statement of Undisputed Material Facts. (Doc. No. 34-1.) However, all but four of Defendant's stated facts were admitted by Plaintiff, denied without citation to the record, or left unanswered. (*Id.*) Although Defendant's Reply brief alerted Plaintiff to the requirements of the Local Rules (Doc. No. 36 at 1–4), Plaintiff did not request permission to file a Sur-Reply or to amend his Response to Defendants' Statement of Undisputed Material Facts. Accordingly, this Court accepts as undisputed for the purposes of summary judgment all of Defendant's asserted facts except for numbers seven, nine, nineteen, and twenty. Unless otherwise indicated, all facts in this factual history are undisputed and come from Plaintiff's Response to Defendants' Statement of Undisputed Material Facts (Doc. No. 34-1).

1

request was approved, and he was on leave from March 18, 2011, through May 16, 2011. On May 13, 2011, CMCSS Director of Schools Michael Harris and CMCSS Chief Human Resources Officer Bruce Jobe met with Starley and demoted him from his position as assistant principal effective July 1, 2011, the first day of the 2011–2012 school year. Starley retained his assistant principal title, pay, and benefits through the end of the 2010–2011 school year; however, he was instructed to stay home and not to report to MCHS at the end of his leave. In lieu of a teaching position, Jobe offered Starley the opportunity to retire early. When Starley protested that he had missed the April 15 deadline to submit his retirement paperwork, Jobe volunteered to waive that requirement. (Doc. No. 34-4 at 7.) Jobe later assigned Starley to a teaching position at the Alternative School for the next academic year. Alternative School Administrator David Turner assigned Starley to a position as a "facilitator of all students," which included time as an inclusion teacher for special education students. (Doc. No. 28-5 at 7–8.) Starley filed the instant lawsuit on April 10, 2012, alleging that these events violated his FMLA rights and constituted discrimination on the basis of age, gender, and race in violation of the Tennessee Human Rights Act ("THRA"). (Doc. No. 1-1.)

The parties agree that Harris demoted Starley because Harris "believed that Plaintiff was not a strong instructional leader and did not consistently exhibit good communication skills." (Doc. No. 34-1 ¶ 13.) Starley's primary duties as an assistant principal were discipline, instructional leadership, and communicating and working with parents. MCHS Principal Christy Houston believed discipline was Starley's strength, so discipline was his primary responsibility at MCHS. However, when the Core Curriculum was adopted, Tennessee assessment and data collection requirements became more stringent and administrators were required to frequently evaluate teachers' performance; CMCSS's need for administrators with strong instructional knowledge therefore increased. Based on conversations with school administrators, Harris

2

believed that Starley had consistent communication problems and was "the least strong in instructional work of any of the assistant principals within CMCSS." (*Id.* ¶ 9.)

Starley contests that assessment. According to Starley, all of his evaluations were "excellent." (Doc. No. 28-4 at 16.) Starley avers

> Never was I told that I was not a strong instructional leader. During my time as an assistant principal under Houston, I performed the duties I was assigned. Principal Houston preferred to do the staff instruction herself and I worked for her. I could not direct her activities as I was the assistant and she was the principal.

(Doc. No. 34-3 ¶ 3.) Indeed, Starley's peer evaluations show teachers were generally satisfied with Starley's performance. In the years leading up to Starley's demotion, most rated his communication skills and knowledge of instructional practices as adequate or better. (*See* Doc. No. 34-3.) However, his reviews were not uniformly positive. For example, in 2010 in response to the prompt "My assistant principal is a resource for helping faculty and staff grow as professionals through the use of evaluation tools," twenty-five strongly agreed, thirty-two agreed, five disagreed, one strongly disagreed, and four selected "I don't know." (*Id.* at 100; *see generally* Doc. No. 34-3.)

Starley's annual evaluations also included professional growth recommendations. According to the "Professional Growth Plan Explanation," "the assistant principal and principal will choose a minimum of one area of growth from each of the six areas," "co-curricular, professional growth, curriculum, facilities management, student services, and human resources." (*Id.* at 49.) Starley's annual evaluations consistently included recommendations relating to his communication and instructional leadership skills:

- **2004–2005 Recommendations:** "Monitor communications with students and parents . . . Always consult with Guidance before recommending the GED path," participate in professional activities to enable growth in instructional leadership, monitor lesson plans, and "continue to work with teachers in evaluation process." (Doc. No. 27-1 at 1.)

3

- **2005–2006 Recommendations:** Starley's recommendations regarding communications with parents, students, and staff were the same this year as the previous year. Starley was also to "[c]ontinue growth in curricular leadership by visibility in the classrooms, evaluation process, and monitoring of school district initiatives." (Doc. No. 27-2 at 2.)

- **2006–2007 Recommendations:** "Monitor communication with students and parents when working with discipline issues," "[c]ontinue growth in curricular leadership," "[c]ontinue to work with teachers in evaluation process," and "[p]articipate in DWM and Toolbox professional development activities to enable effective monitoring of these school activities." (Doc. No. 27-3 at 1.)

- **2007–2008 Recommendations:** "Increase knowledge of school and district academic initiatives in preparation for the monitoring of them," "[t]ake a more active role in the implementation of district-wide writing model," and "take a more active role in curriculum." (Doc. No. 27-4 at 1.)

- **2009–2010 Recommendations:** "[I]ncrease knowledge in areas of supervision to include disciplinary and curricular development activities" and "[t]reat all personnel and stakeholders with respect and in a professional matter." (Doc. No. 27-5 at 1–2.)

Starley's annual reviews included evaluations by Principal Houston. These evaluations were generally, but not uniformly, positive. For instance, in her 2007–2008 evaluation, Principal Houston rated Starley's knowledge of "Standards-based classrooms" as "adequate," "District-wide writing model" as "needs improvement," "Benchmark use" as "adequate," and "Use of instructional strategies" as "adequate." (Doc. No. 34-3 at 50.) However, in her 2009–2010 evaluation, Principal Houston checked "Agree" under "District-Wide Writing Model"; "Use of Instructional Strategies"; and in the category "Knowledge of Standards-based classrooms," under "Standards," "Data Analysis and use," "Learning Environment," and "Professional Collaboration." (*Id.* at 84.) She also checked "Agree" under "My assistant principal is professional at all times." (*Id.*) Under "Benchmark Use" and "Implementation of Rigor and Relevance," she checked "Strongly Agree." (*Id.*) According to Director Harris, these reviews were overly-generous; he claims CMCSS assistant principal evaluations "often do not reflect the

4

performance as accurately as they should . . . it may be especially true of Ms. Houston . . . issues regarding performance were difficult for her." (Doc. No. 28-1 at 9.)

Despite these generally positive annual reviews, Houston reported problems with Starley's job performance, specifically with his instructional leadership and communication skills. For instance, Houston stated that the assistant principal role "has shifted so completely to instruction and common core and evaluations in a different way and technology that—that Mr. Starley was hesitant to sometimes move into." (Doc. No. 28-2 at 14–15.) Houston stated that technology "wasn't his skill set" so he "didn't want to transition to technology and would not have if not urged to." (*Id.* at 20–21.) As a result, instead of "forcing" it, Houston "tried to divide responsibilities in a way so he would do discipline." (*Id.* at 15.)

Houston also reported that she and other CMCSS administrators received complaints from parents about their communications with Starley. (*Id.* at 14, 19–20.) Houston felt that she had to "be the buffer" between Starley and parents who were upset with Starley. (*Id.* at 14.) Parents also complained about Starley to CMCSS administrators above the school level if they "didn't perhaps like the way that he spoke to them," and those administrators would relay the complaints back to Houston. (*Id.* at 19–20.) Houston stated that a parent has not complained about any other assistant principal above the school level "in several years." (*Id.* at 23.)

Towards the end of almost every school year, Houston had conversations about school staffing with her direct supervisors, Director of High Schools Dr. Rosalyn Evans and Chief Academic Officer Dr. B.J. Worthington. (*Id.* at 16–20.) When Houston became the principal in 2004, another CMCSS administrator asked her if she wanted Starley "moved"; Houston refused. (*Id.* at 16, 22–23.) In subsequent years Houston had general discussions with Evans and Worthington about the "strengths and weaknesses of assistant principals," including Starley, and about some of the parent complaints about Starley. (*Id.* at 18.)

5

From her conversations with Houston about Starley's performance and effectiveness, Director Evans determined "it was clear that Mr. Starley was used in a disciplinarian role and was not an instructional leader." (Doc. No. 27 ¶ 4.) Furthermore, from her conversations with Houston and parents of MCHS students, she believed Starley "did not always communicate well with students and parents which sometimes caused problems." (*Id.* ¶ 5.) Evans also reviewed Starley's annual evaluations. (*Id.* ¶ 8.) Based on these inputs, Evans believed Starley needed to develop his skills as an instructional leader, and that he did not always communicate effectively with students and parents. (*Id.* ¶¶ 4, 5, 8, 9.) Evans related her observations to Harris. (*Id.* ¶ 7.)

According to Harris, "[t]oday an assistant principal cannot just be a disciplinarian. They have to be well-versed and extremely knowledgeable of the latest instructional strategies . . . they have to be master teachers themselves who are able to grow and develop the teachers in their building." (Doc. No. 28-1 at 10.) Based on conversations with staff, including Evans, Harris believed that Starley was not a strong instructional leader. (Doc. No. 34-1 ¶ 18.) In fact, Starley admits that "as Director Harris talked with his leadership team about assistant principals, Plaintiff's name usually arose because the consensus was that Plaintiff was the least strong in instructional work of any of the assistant principals within CMCSS." (*Id.* ¶ 9.) Harris "felt it was best that we find someone to put [in the assistant principal position] who does have that instructional capacity." (Doc. No. 28-1 at 10.)

Harris also discussed Starley's demotion with Bruce Jobe. Jobe stated Harris told him that he planned to demote Starley because he wanted someone in the role "that was going to do what he felt like the job should be." (Doc. No. 34-6 at 6.) Harris claims he also spoke directly with Houston, who told him that Starley was "[n]ot a good communicator and not an expert in instruction." (Doc. No. 28-1 at 28.) Houston denies this, stating that she cannot remember ever

6

discussing Starley's performance with Harris before Starley was demoted. (Doc. No. 34-5 at 22, 25.) Harris informed Houston of Starley's impending demotion in the spring of 2011. (*Id.* at 6.)

Upon his return from FMLA leave, Starley was not asked to return to work; according to Harris, "[t]here were only about six days left in the year, and . . . it would be very difficult to come in for six days. By the time you figured out what was going on and were able to be of any benefit, I think probably it would have been a waste of time for him and for the staff there." (Doc. No. 28-1 at 32.) Jobe claims he made the decision to reassign Starley home for this period because "all that was left to do was finals. It's usually a very slow time for administrators, and . . . I didn't expect him to go back out there . . . It seemed like a nice gesture at the time." (Doc. No. 28-3 at 18.) According to Starley, he was not told this was a nice gesture; instead, he believed the "action was punitive and it hurt [him] deeply" because he did not have the opportunity to say goodbye to his students and colleagues at MCHS. (Doc. No. 34-3 ¶ 12.)

Starley, a white man, was in his sixties when he was demoted. Starley was replaced by Kim McFadden Walker, an African-American woman in her thirties. According to Harris, McFadden-Walker was selected for the position because of her instructional expertise. (Doc. No. 28-1 at 32.) However, Starley contends that younger women are consistently given favorable treatment in the school system; he notes that Houston, a white woman in her thirties, became the Principal of MCHS after just one year of experience as an assistant principal. (Doc. Nos. 34-4 at 10; 28-2 at 13–14.)

B. *Procedural History*

Starley filed a Verified Complaint in the Circuit Court for Montgomery County, Tennessee at Clarksville on April 10, 2012, alleging violations of his FMLA rights and discrimination on the basis of age, gender, and race in violation of the THRA. (Doc. No. 1-2.) Defendant CMCSS removed the case to this Court on May 9, 2012 (Doc. No. 1) and answered

7

the complaint on June 20, 2012 (Doc. No. 4). On January 31, 2014, CMCSS moved for summary judgment (Doc. No. 23) and filed a Memorandum of Law (Doc. No. 24), Statement of Undisputed Material Facts (Doc. No. 25), and multiple exhibits (Doc. Nos. 26, 27, 28-1–28-5) in support of its motion. Starley filed a Response (Doc. No. 34), along with eight exhibits (Doc. Nos. 34-3–34-10) and a Response to Defendant's Statement of Undisputed Material Facts (Doc. No. 34-1). CMCSS filed a Reply (Doc. No. 36) and one exhibit (Doc. No. 36-1) on March 21, 2014.

## II.   LEGAL STANDARD

Summary judgment is rendered when "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party moving for summary judgment bears the initial burden of showing that there is no material issue in dispute." *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Reviewing the facts in the light most favorable to the nonmoving party, the court must ultimately determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Blizzard*, 698 F.3d at 282 (internal citations and quotations omitted).

8

## III.  FMLA CLAIMS

The FMLA entitles a qualifying employee to twelve weeks of leave per year, if he or she has "a serious health condition that makes the employee unable to perform the functions of [his or her] position." 29 U.S.C. § 2612(a)(1)(D) (2013).  Under the statute, it is unlawful for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [by the FMLA]," *id.* § 2615(a)(1), or "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]," *id.* § 2615(a)(2).  As such, two distinct theories of recovery arise from these provisions:  (1) the "interference" or "entitlement" theory under § 2615(a)(1), and (2) the "retaliation" or "discrimination" theory under § 2615(a)(2).  *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 282 (6th Cir. 2012).  Here, Starley alleges FMLA violations under both theories.  The Court evaluates the parties' arguments with respect to each theory in turn.

### A.  Interference Claim

Under the FMLA, eligible employees are entitled to medical leave and to reinstatement following the leave. 29 U.S.C. §§ 2612(a)(1), 2614(a)(1).  "If an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a violation has occurred." *Arban v. W. Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003).  CMCSS contends that it did not interfere with Starley's FMLA rights because he was permitted to take medical leave and he was reinstated to his assistant principal position upon his return.  (Doc. No. 24 at 10.)  In the alternative, CMCSS contends that Starley was not entitled to reinstatement because he would have been demoted even if he had not taken FMLA leave.  (*Id.*)  Starley apparently contends that he was denied reinstatement because he was reassigned home and not permitted to return to MCHS.  (*See* Doc. No. 34 at 13.)  Furthermore, Starley claims he would not have been demoted had he not taken leave, as evidenced by his consistently positive evaluations from Principal

9

Houston and MCHS teachers, and the fact that Principal Houston did not wish to see him removed. (*Id.* at 15–16.)

FMLA interference claims "are analyzed under the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Madry v. Gibraltar Nat. Corp.*, 526 F. App'x 593, 595 (6th Cir. 2013) (citing *Donald v. Sybra, Inc.*, 667 F.3d 757, 762–63 (6th Cir. 2012)). Under this burden-shifting framework, if the employee "demonstrate[s] a prima facie case of entitlement under the FMLA," the burden shifts to the employer to state a "legitimate, nondiscriminatory reason" for the challenged employment action. *Id.* (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802). If the employer meets this burden, then the burden shifts back to the employee to show that the "proffered legitimate reason 'was in fact pretext.'" *Id.* (quoting *McDonnell Douglas Corp.*, 411 U.S. at 804). "An employee returning from FMLA leave is not entitled to restoration unless he would have continued to be employed if he had not taken FMLA leave." *Grace v. USCAR*, 521 F.3d 655, 669 (6th Cir. 2008) (quoting *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 245 (6th Cir. 2004)).

To establish a prima facie case of interference under the FMLA, a plaintiff must show:

> (1) She was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take leave, and (5) the employer denied the employee FMLA benefits to which she was entitled.

*Donald*, 667 F.3d at 761. For the purposes of resolving this motion, the parties do not dispute the first four elements. (Doc. No. 24 at 10.) Accordingly, the only element in dispute is whether CMCSS denied Starley FMLA benefits to which he was entitled.

Employees returning from FMLA leave are typically "entitled to be restored to 'the position of employment held by the employee when the leave commenced,' or 'to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of

employment.'" *Grace*, 521 F.3d at 669 (quoting 29 U.S.C. § 2614(a)(1)). An equivalent position "must involve the same or substantially similar duties and responsibilities," 29 C.F.R. § 825.215(a), and although an employer is permitted to accommodate an employee's request for a different position, "an employee cannot be induced by the employer to accept a different position against the employee's wishes," 29 C.F.R. § 825.215(e)(4). Starley presented evidence that he was not restored to an equivalent position when he returned from FMLA leave. Even though Starley received the same salary and had the same job title, he was reassigned home upon return from leave, thus he did not have "the same or substantially similar duties." *See* 29 C.F.R. § 825.215(a). The Court notes that the parties agree the last week of the school year "was a slow period for high school administrators," (Doc No. 34-1 ¶ 28), thus it is possible that Starley would have been idle were he permitted to return to MCHS. Nevertheless, the Court finds Starley has raised a genuine dispute of material fact as to this element of his prima facie case.

Because Starley set out a prima facie case of entitlement under the FMLA, the burden shifts to CMCSS to state a "legitimate, nondiscriminatory reason" for Starley's demotion. *Madry*, 526 F. App'x at 595 (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802). The parties agree that Harris made the decision to demote Starley because, after conversations with other CMCSS administrators, Harris "believed that Plaintiff was not a strong instructional leader and did not consistently exhibit good communication skills." (Doc. No. 34-1 ¶ 13.) The parties also agree that communication and instructional leadership were important duties of an assistant principal. (*See id.* ¶¶ 14, 15, 16, 17, 21.) CMCSS has put forth a legitimate, nondiscriminatory reason for Starley's demotion that indicates he would have been demoted even if he had not taken leave.

At the final phase of the burden shifting analysis, a plaintiff can refute a defendant's proffered nondiscriminatory reason for the adverse employment action "by showing that the

11

proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Grace*, 521 F.3d at 670 (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003)); *accord Donald*, 667 F.3d at 762.

> The first category implicates evidence that the *proffered bases for the [demotion] never happened*, and the second category requires that the plaintiff *admit the factual basis underlying the employer's proffered explanation* and further admit that *such conduct could motivate [demotion]*. The third category of pretext consists of evidence that other employees, particularly employees outside the protected class, were not disciplined even though they engaged in substantially identical conduct to that which the employer contends motivated its discipline of the plaintiff.

*Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012) (emphasis added) (citations and quotation marks omitted). The thrust of Starley's argument is that the "objective evidence . . . shows that [Starley] was indeed performing his job duties well" so this Court should not "rely upon Harris' self serving subjective statements [about Starley's alleged deficiencies] rather than the objective evidence." (Doc. No. 34 at 15.) Starley also mentions the disciplinary record of his replacement, McFadden Walker. (*Id.* at 23–24.) However, Starley does not admit the factual basis underlying CMCSS's explanation, nor does he admit that the conduct alleged by CMCSS could warrant demotion. Accordingly, this Court reads Starley's argument as a claim that CMCSS's proffered reason has no basis in fact, or that it was insufficient to warrant demotion.

In assessing evidence of the third type of pretext, that "other employees, particularly employees outside the protected class, were not disciplined even though they engaged in substantially identical conduct," the Court considers the similarity, "severity and commonality" of the comparator incidents. *Chattman*, 686 F.3d at 349–50. Starley's only comparator evidence is a claim that his replacement was issued a written reprimand after she confiscated drugs "from

12

a student but told the school administration that she found the drugs in the hallway." (*Id.* at 4.) First, the Court notes that the alleged reprimand Starley quotes in his brief does not appear in the record at either of the locations cited. (*See id.*) Even assuming the reprimand was issued, McFadden Walker is not a comparator. McFadden Walker's alleged fib to school administrators is not "substantially identical" to Starley's communication problems, which primarily involved communications with parents and students. *See supra* Section I.A. Furthermore, Starley alleges only one incident involving McFadden Walker, whereas Starley was the subject of numerous complaints, and according to Houston, was the only administrator who drew parent complaints above the school level in several years. (Doc. No. 28-2 at 23.) Accordingly, Starley has failed to establish a genuine dispute of material fact as to whether CMCSS's reasons for his demotion were pretext under the third method.

Starley's evidence under the first method, that the proffered justification for his demotion has no basis in fact, falls into the following categories: (1) the duties of an assistant principal, (2) Houston's participation in the decision-making process, (3) Starley's meeting with Harris and Jobe, and (4) Starley's annual evaluations. (*See* Doc. No. 34 at 18, 22–24.) First, Starley claims that the "job description for the position of assistant principal and Harris' explanation of Stanley's [sic] job duties are inconsistent." (*Id.* at 23.) This claim is false. The parties agree that Harris "testified that Plaintiff's job duties as an assistant principal included instructional leadership and communication and working with parents." (Doc. No. 34-1 at 14.) According to the "High School Assistant Principal" job description, Starley's "Essential Duties" included "Counsels with students, parents and staff as necessary," "Assists in monitoring the effect of school practices and their impact on student learning," and "Assists in providing conceptual guidance for teachers regarding effective classroom practice." (Doc. No. 34-5 at 69.)

13

Second, Starley makes hay of the discrepancy between Harris's deposition testimony that he discussed Starley's alleged poor performance with Houston, and Houston's denial of any such conversation. (Doc. No. 34 at 23.) However, Starley does not dispute that Harris is responsible for "[d]ecisions to remove high school assistant principals." (Doc. No. 34-1 ¶ 7.) Nor does Starley dispute that Harris consulted with other administrators, including Evans, before making his decision (*id.* ¶ 18); that Houston discussed Starley's job performance with Evans (*id.* ¶ 11); or that Evans relayed Houston's comments about Starley to Harris (*see id.* ¶ 12). To survive summary judgment, Starley must demonstrate not just a factual dispute, but a dispute of *material* fact. *See* Fed. R. Civ. P. 56(a). Accordingly, this argument fails because Starley does not explain, nor has this Court discerned, why this disputed fact is material.

Third, Starley contends that the fact that he was reassigned home at the conclusion of his leave constitutes evidence of pretext. (Doc. No. 34 at 23.) This fact is legally significant because it supports Starley's contention that he was not reinstated to an equivalent position upon his return from leave, as required by the FMLA. *See supra*; Grace, 521 F.3d at 669. However, the fact that Starley was not reinstated is not, in itself, evidence that CMCSS's stated reason for its decision not to reinstate is pretext.

Finally, Starley asserts that his "performance evaluations are inconsistent with Harris' testimony that Starley did a poor job as assistant principal" and that "Harris asks this Court to believe that Starley was demoted for a lack of communication abilities with Houston even though his evaluations consistently show no problems with his communication abilities." (Doc. No. 34 at 22–24.) Harris did not decide to demote Starley because he "did a poor job as assistant principal" in general, but because "he believed that Plaintiff was not a strong instructional leader and did not consistently exhibit good communication skills." (Doc. No. 34-1 ¶ 13.) As to these specific skills, Starley's evaluations do not "consistently show no problems." To the contrary,

14

they indicate that some teachers were dissatisfied with Starley's performance. (*See generally* Doc. No. 34-3 at 13–111.) Every year Starley's evaluations also included recommendations relating to his communication and instructional leadership skills. *See supra* Section I.A. Some of these recommendations indicate Starley was not meeting expectations in these categories. (*See, e.g.*, Doc. No. 27-5 at 1–2 ("[t]reat all personnel and stakeholders with respect and in a professional matter").)

More importantly, under the first method of establishing pretext, Starley must present some evidence that CMCSS's proffered reason for his demotion has no basis in fact, or "evidence that the proffered bases for the [demotion] never happened." *Chattman*, 686 F.3d at 349. Starley does not address CMCSS's evidence that parents called Houston and other administrators above the school level to complaint about Starley (Doc. No. 28-2 at 14, 19–20, 23), or that Houston assigned Starley to discipline duties because he was hesitant to serve as an instructional leader (*id.* at 14–15). Nor does he address the fact that Houston communicated these issues to Evans (Doc. No. 34-1 ¶ 11), or that Harris relied on Evans' opinion in reaching his decision to demote Starley (*id.* ¶ 18). Accordingly, Starley has failed to establish a genuine dispute of material fact as to whether CMCSS's reasons for his demotion were pretext under the first method.

However, even if Starley's teacher evaluations are sufficient to cast some doubt on Harris's proffered reason for Starley's demotion, Starley cannot prevail here because of the honest belief rule. Under the honest belief rule, "so long as the employer honestly believed in the proffered reason" for the adverse employment action, "an employee cannot prove pretext even if the employer's reason in the end is shown to be 'mistaken, foolish, trivial, or baseless'" provided that it acts in "reasonable reliance on the particularized facts that were before it at the time the decision was made." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707–08 (6th Cir.

15

2006) (quoting *Smith v. Chrysler Corp.,* 155 F.3d 799, 806 (6th Cir.1998)); *accord Donald*, 667 F.3d at 763. The employee may rebut the employer's honest belief by producing "evidence to the contrary, such as an error on the part of the employer that is 'too obvious to be unintentional.'" *Blizzard*, 698 F.3d at 286. The employee must "allege more than a dispute over the facts upon which the discharge was based. He must put forth evidence which demonstrates that the employer did not honestly believe in the proffered non-discriminatory reason for its adverse employment action." *Id.* (quoting *Braithwaite v. Timken Co.,* 258 F.3d 488, 494 (6th Cir. 2001) (internal quotations omitted)).

Here, Starley disputes Harris's assessment of his instructional knowledge, points out that Harris did not review Starley's teacher evaluations, and complains that neither Harris nor Evans spoke to him about his alleged shortcomings before Harris made the decision to terminate him. (Doc. No. 34 at 13.) But under the honest belief rule, it is not necessary that the "decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Smith*, 155 F.3d at 807. As explained above, Harris conducted an adequate evaluation before deciding to demote Starley. Harris consulted with school administrators, including Evans, who had reviewed Starley's evaluations and had regular conversations about Starley's performance with Houston, Starley's direct supervisor. Starley presents no evidence that Harris "did not honestly believe in the proffered non-discriminatory reason." *Blizzard*, 698 F.3d at 286. Starley's "disagreement with [CMCSS's] honest business judgment regarding [Plaintiff's] work does not create sufficient evidence of pretext in the face of the substantial evidence that [CMCSS] had a reasonable basis to be dissatisfied." *Id.* (internal citation and quotations omitted). Accordingly, CMCSS's motion for summary judgment as to Plaintiff's FMLA interference claim is **GRANTED**.

16

*B. Retaliation Claim*

The retaliation theory of liability under the FMLA is based on 29 U.S.C. § 2615(a)(2), which provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." *Arban*, 345 F.3d at 401. FMLA implementing regulations specifically prohibit employers from "us[ing] the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." 29 C.F.R. 825.220(c). Although the "employer's intent is not a relevant part of the entitlement inquiry . . . [u]nder the retaliation theory (also known as the discrimination theory), in contrast, the employer's motive *is* an integral part of the analysis." *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 508 (6th Cir. 2006) (emphasis in the original). In fact, "[t]he central issue raised by the retaliation theory . . . is 'whether the employer took the adverse action *because of* a prohibited reason or for a legitimate nondiscriminatory reason.'" *Seeger*, 681 F.3d at 282 (quoting *Edgar*, 443 F.3d at 508) (emphasis added).

Starley contends that he was demoted in retaliation for taking FMLA leave. (*See* Doc. No. 34-1 at 16–18.)[2] The Court notes that, by failing to respond to fact twenty-two of Defendant's Statement of Undisputed Material Facts, Starley admits "[t]he fact that Plaintiff had

---

[2] In his complaint, Starley alleges: "The position in which Plaintiff was placed was had [sic] a significant decrease in pay, was a removal of substantial responsibility, caused Plaintiff to work less desirable hours, and was physically and emotionally stressful to Plaintiff." (Doc. No. 1-1 ¶ 23.) Defendant apparently read this allegation as a claim that Starley's specific classroom placement, and not simply the fact of his demotion, constituted unlawful retaliation. (*See* Doc. No. 24 at 12–14.) However, the only record evidence relating to this claim is deposition testimony about Starley's lack of certain teaching credentials (*see, e.g.*, Doc. Nos. 28-1 at 11–12; 28-3 at 21–22; 28-5 at 6–8), and Starley's deposition testimony that he "assumed" he was placed at the Alternative School in retaliation for taking FMLA leave (Doc. No. 28-4 at 25). (*See also* Doc. No. 34-1 ¶ 36.) Furthermore, even though CMCSS's motion discusses this claim at length (Doc. No. 24 at 12–14), Starley's Response is completely silent as to this theory of retaliation (*see* Doc. No. 34 at 16–18). The Court does not believe that Starley intended to bring a retaliation claim on the basis of his specific classroom placement; instead it appears that Starley set out these allegations in support of his interference claim to show that his new position was not substantially similar to the first, in support of a potential damages award, or simply to explain why the new placement was less desirable than his assistant principal position. Starley has also failed to pursue such a claim by presenting relevant evidence or addressing it in his response to Defendant's motion for summary judgment. Accordingly, the Court addresses only the retaliation claim that Starley stated in his complaint and defended throughout the litigation, the claim stemming from his demotion.

17

taken FMLA leave in the spring of 2011 was not a factor in his decision to remove Plaintiff as assistant principal." (Doc. No. 34-1 at 22.) A plaintiff bringing a retaliation claim under the FMLA must establish the opposite contention, so this admission appears fatal to Starley's claim. However, "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged [his initial] burden." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (citation omitted). Accordingly, this Court will proceed to consider Starley's FMLA retaliation claim.

The appropriate standard for evaluating FMLA retaliation cases at summary judgment "depends not on the type of evidence presented (direct versus circumstantial), but on the type of claim brought (single-motive versus mixed-motive)." *Hunter v. Valley View Local Sch.*, 579 F.3d 688, 692 n.2 (6th Cir. 2009). The Court finds Starley has alleged a single-motive retaliation claim and proceeds with the analysis as such.[3] Furthermore, Starley relies exclusively on circumstantial evidence of discrimination. (*See* Doc. No. 34 at 16.) Where a plaintiff brings "an FMLA claim based on circumstantial evidence alleging a single motive for discrimination, it is evaluated under the familiar *McDonnell Douglas* burden-shifting framework." *Seeger*, 681 F.3d at 283. As explained above, the plaintiff bears the initial burden of pleading a prima facie case of FLMA discrimination, at which point the burden shifts to the defendant to state a legitimate, nondiscriminatory reason for the challenged employment action. *Donald*, 667 F.3d at 762 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802). If the defendant does so, the burden shifts back to the plaintiff to show that the proffered reason was pretext. *Id.*

---

[3] While neither Starley nor CMCSS specifically identifies the claim in this case as either single or mixed-motive, Starley's reliance on the *McDonnell Douglas* burden-shifting framework, which is only applicable to single-motive claims, shows he intends to prove a single-motive claim. (*See* Doc. No. 34 at 16–17 (citing *Morris v. Family Dollar Stores of Ohio, Inc.*, 320 F. App'x 330, 338 (6th Cir. 2009) (applying *McDonnell Douglas* framework); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981) (applying *McDonnell Douglas* framework)).)

18

The parties dispute whether Starley has presented sufficient evidence to state a prima facie case of FMLA retaliation. (Doc. No. 24 at 12; Doc. No. 34 at 16.) However, the Court need not decide this dispute. Even if Starley has presented sufficient evidence to establish a prima facie case, Starley's retaliation claim must fail for the same reasons that his interference claim fails: CMCSS has presented a legitimate, nondiscriminatory reason for demoting Starley, and Starley has failed to present evidence of pretext or to rebut CMCSS's reasoning under the honest belief rule. Accordingly, Starley has failed to demonstrate a genuine issue of material fact as to his FMLA retaliation claim, and CMCSS's motion for summary judgment as to this claim is **GRANTED**.

## IV. THRA CLAIMS

The Tennessee Human Rights Act ("THRA") prohibits employment discrimination on the basis of age, gender, race, and certain other protected characteristics. Tenn. Code Ann. § 4-21-401(a) (2013). In addition to his FMLA claims, Starley alleges that his demotion constitutes discrimination on the basis of age, gender, and race in violation of the THRA.[4] (Doc. No. 1-1 ¶¶ 27–44.) Starley relies exclusively on circumstantial evidence to support his claims. (*See* Doc. No. 34 at 18–27.) Because the purpose of the THRA is to "execute the policies reflected in the federal civil rights acts," Tennessee courts "apply the analysis of the federal courts in Title VII actions to causes of action brought pursuant to the [THRA]." *Fox v. Baptist Mem'l Hosp. Tipton*, 148 S.W.3d 903, 905 (Tenn. Ct. App. 2002) (age discrimination case); *accord Versa v.*

---

[4] As an initial matter, the Court notes that Plaintiff pled claims under the FMLA and THRA only; the complaint does not mention the Age Discrimination in Employment Act ("ADEA"). (*See* Doc. No. 1-1.) Accordingly, Defendant moved for summary judgment as to Plaintiff's claim for age discrimination under the THRA. (Doc. No. 24 at 15–19.) Nevertheless, Plaintiff refers inexplicably and exclusively to the ADEA in his response, making no mention of his THRA age discrimination claim. (Doc. No. 34 at 18–24.) Even though Defendant pointed out this issue in its Reply brief (Doc. No. 36 at 6), Plaintiff did not move for leave to respond or to amend its response. As noted above, "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged [his initial] burden." *Stough*, 138 F.3d at 614. Accordingly, this Court will consider Starley's THRA age discrimination claim.

*Policy Studies, Inc.*, 45 S.W.3d 575, 580 (Tenn. Ct. App. 2000) (race discrimination claim).

THRA claims based on circumstantial evidence are therefore analyzed under the *McDonnell Douglas* burden shifting framework. *Fox*, 148 S.W.3d at 905.

To survive a motion for summary judgment on his THRA claims, Starley must first put forth evidence to support a prima face case of discrimination. *See Versa*, 45 S.W.3d at 580. If he does so, the burden then shifts to CMCSS to establish a legitimate, nondiscriminatory reason for Starley's demotion. *Id.* Finally, the burden shifts back to Starley to present evidence of pretext. *Id.* The Court assumes that Starley has put forth sufficient evidence to create a genuine dispute of material fact as to his prima facie cases of age, race, and sex discrimination under the THRA. As described in the analysis of Starley's FMLA claims above, the Court finds that CMCSS proffered a legitimate, nondiscriminatory reason for its decision to demote Starley. Therefore, the Court analyzes Starley's evidence of pretext for each claim.

Plaintiffs may establish pretext "in one of three ways: by showing '(1) that the proffered reasons had no basis *in fact,* (2) that the proffered reasons did not *actually* motivate [the employee's] discharge, or (3) that they were *insufficient* to motivate discharge.'" *Versa*, 45 S.W.3d at 581 (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). "[O]n summary judgment, a non-moving plaintiff must 'produce evidence from which a rational factfinder could infer that the company lied about its proffered reasons for [the employee's] dismissal.'" *Versa*, 45 S.W.3d 575, 581 (Tenn. Ct. App. 2000) (quoting *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1124 (7th Cir. 1994)). As explained below, Starley failed to meet this burden.

A. *Age Discrimination*

Starley relies on the same evidence of pretext for all of his claims, including his FMLA claims, attempting to prove pretext under method one by arguing that CMCSS's proffered

20

reasons for his demotion had no basis in fact. (*See* Doc. No. 34 at 18, 21–24.) In support of his claim for age discrimination, Starley presents one additional piece of evidence: Immediately after he was informed that he was to be demoted, Jobe asked Starley if he wished to retire, and when Starley stated that it was too late because he had missed the filing deadline, Jobe offered to waive the deadline. (Doc. No. 34-4 at 7.)

In assessing the relevance of allegedly discriminatory remarks presented as circumstantial evidence, courts weigh factors such as the identity of the speaker, the content of the remark, and the frequency of the remarks. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 355 (6th Cir. 1998). "Isolated and ambiguous comments 'are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination." *Id.* (quoting *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993). Jobe's comment is the only remark Starley cites, thus the remark is "isolated." Furthermore, Jobe's offer of retirement, standing alone, does not constitute evidence of discriminatory animus because it is ambiguous—on its face, the remark does not "strongly suggest that the speaker harbors a bias against older workers." *Id.* At most, Jobe's remark constitutes a scintilla of evidence. It does not constitute sufficient evidence to create a genuine dispute of material fact as to pretext. *See Blizzard*, 698 F.3d at 282; *accord Gatch v. Milacron, Inc.*, 111 F. App'x 785, 792 (6th Cir. 2004) (reversing district court's denial of defendant's renewed motion for judgment as a matter of law because "offer of [a] retirement package and [some age-related] passing comments are insufficient" to establish pretext).

Accordingly, CMCSS's motion for summary judgment as to Starley's THRA age discrimination claim is **GRANTED**.

*B. Gender and Race Discrimination*

Starley does not present any additional evidence of pretext to support his claims of THRA gender and race discrimination. (Doc. No. 34 at 26.) As explained in this Court's

21

analysis of Starley's FMLA claims, Starley's proffered evidence of pretext is insufficient to create a genuine dispute of material fact and he has presented no evidence to refute CMCSS's honest belief in its reasons for demoting him. Accordingly, CMCSS's motion for summary judgment as to Starley's THRA race and gender discrimination claims is **GRANTED**.

## V.    CONCLUSION

For the above-stated reasons, the Court **GRANTS** CMCSS's Motion for Summary Judgment (Doc. No. 28) as to all of Starley's claims. Defendant's Motion to Ascertain Status (Doc. No. 41) is **TERMINATED as MOOT**. The Clerk of the Court is **DIRECTED** to close the case.

It is so ORDERED.

Entered this ___ day of February, 2015.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT
